Submitted on the record February 24, ballot titles referred to Attorney General for modification May 25, 2004

Kris KAIN

*and*

Joann WALLER,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S51105)

Joann WALLER

*and*

Kris KAIN,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(S51106)
(Consolidated for Opinion)

93 P3d 62

Margaret S. Olney, of Smith, Diamond & Olney, Portland, filed the petitions for petitioners.

Steven R. Powers, Assistant Attorney General, Salem, filed the answering memoranda for respondent. With him on the answering memoranda were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DURHAM, J.

## DURHAM, J.

Petitioners in these consolidated ballot title proceedings challenge the Attorney General's ballot titles for two proposed initiative measures that would amend the Oregon Constitution. For the reasons stated below, we refer the ballot titles to the Attorney General for modification.

The two proposed measures are closely related in substance. Initiative Petition 111 (2004) provides:

"The Constitution of the State of Oregon is amended by adding the following section, which section shall read:

"Section 1. For tax years beginning on or after January 1, 2005, the total amount of ad valorem property taxes levied or imposed on a single family residence and the parcel of land upon which it is located, including taxes levied to pay the principal and interest payments on bonded indebtedness and for serial levies, operating levies, and other such add-on taxes, shall not exceed the equivalent of Two Hundred Dollars ($200.00) per month."

For that proposed initiative, the Attorney General certified the following ballot title:

"AMENDS CONSTITUTION: CAPS PROPERTY TAXES ON SINGLE-FAMILY RESIDENCE AND THE LAND UPON WHICH IT IS LOCATED

"RESULT OF 'YES' VOTE: 'Yes' vote caps property taxes on single-family residential properties to $200 per month; reduces revenue to schools, other local governments under certain circumstances.

"RESULT OF 'NO' VOTE: 'No' vote rejects property tax cap; retains existing tax system limiting rates, limiting assessed-value growth, setting permanent tax rates, allowing voter-approved temporary taxes.

"SUMMARY: Amends Constitution. Constitution currently limits ad valorem property tax rates that provide funding to schools, other local governments; limits growth in assessed property value to three percent annually; sets permanent tax rates; allows voter-approved temporary

local option taxes above those rates. Beginning 2005, measure caps total ad valorem property taxes on each single-family residence and land upon which it is located to equivalent of two hundred dollars per month. Cap applies regardless of property's assessed value. Measure limits local option taxes, bond pledging authority. Reduces revenue to schools, local governments when taxes on assessed property value of any single-family residential property combined with local option taxes total more than equivalent of two hundred dollars monthly; does not provide replacement funds. Other provisions."

Initiative Petition 112 (2004) provides:

"The Constitution of the State of Oregon is amended by adding the following section, which section shall read:

"Section 1. For tax years beginning on or after January 1, 2005, the total amount of ad valorem property taxes levied or imposed on a single family residence and the parcel of land upon which it is located, including taxes levied to pay the principal and interest payments on bonded indebtedness, and for serial levies, operating levies, and other such add-on taxes, shall not exceed Two Thousand Dollars ($2,000.00) per year. Beginning with the 2005 tax year, the cap enacted by this section shall increase two percent per annum."

For that proposed initiative, the Attorney General certified the following ballot title:

"AMENDS CONSTITUTION: CAPS PROPERTY TAXES ON SINGLE-FAMILY RESIDENCE AND THE LAND UPON WHICH IT IS LOCATED

"RESULT OF 'YES' VOTE: 'Yes' vote caps taxes on single-family residential properties to $2000 annually; increases limit annually; reduces revenue to schools, local governments under certain circumstances.

"RESULT OF 'NO' VOTE: 'No' vote rejects property tax cap; retains existing property tax system limiting rates, limiting assessed value growth, setting permanent rates, allowing voter-approved temporary taxes.

"SUMMARY: Amends Constitution. Constitution currently limits ad valorem property tax rates that provide funding to schools, other local governments; limits growth in assessed property value to three percent annually; sets

permanent tax rates; allows voter-approved temporary local option taxes above those rates. Beginning 2005, measure limits total ad valorem property taxes on each single-family residence and land upon which it is located to two thousand dollars annually; limit increases two percent annually. Cap applies regardless of property's assessed value. Measure limits local option taxes, bond pledging authority. Reduces revenue to schools, local governments when taxes on assessed property value of any single-family residential properties combined with local option taxes total more than two thousand dollars annually; does not provide replacement funds. Other provisions."

Each proposed measure would impose a single maximum limit on property taxes levied or imposed on a single family residence and the land upon which it is located. Initiative Petition 111 would set that limit at $200 per month. Initiative Petition 112 would set that limit at $2,000 per year and, in addition, would increase that limit two percent per annum.

Due to the similarity of the proposed measures, the Attorney General has certified ballot titles for the proposed measures that also are similar. Petitioners, in turn, have filed nearly identical challenges to each certified ballot title. As the following discussion indicates, we reach the same disposition regarding each challenge.

We begin with petitioners' challenge to the certified ballot title for Initiative Petition 111. Petitioners assert that the caption that the Attorney General certified is insufficient because it fails to "reasonably identif[y]," in 15 words or less, "the subject matter of the state measure." ORS 250.035(2)(a). According to petitioners, the Attorney General's reference in the caption to a "cap" on residential property taxes fails to disclose that the proposed measure would create a fundamental change in the relationship between a property's assessed value and the calculation of ad valorem property taxes payable on the property. Petitioners contend that the true subject of the proposed measure is the transformation of Oregon's system of property taxation from one based in significant part on the property's assessed value to one that, due to the cap, assesses taxes at a flat amount regardless of the property's assessed valuation.

The Attorney General responds that, if the people adopt Initiative Petition 111, property taxpayers will continue to face assessments of the value of their residential property by local taxing authorities, but the proposed measure will cap any assessment of taxes on the property at a specific dollar level. The Attorney General also argues that two recent measures, "Measure 5," Article XI, section 11b, of the Oregon Constitution, and "Measure 50," Article XI, section 11, of the Oregon Constitution, imposed various limitations on property taxes without regard to the property's value. As a result, the Attorney General argues, voters will understand that Initiative Petition 111 similarly would impose a property tax cap that applies to all properties regardless of their assessed valuation. The Attorney General also contends that the point that petitioners raise is an effect of the proposed measure, not its subject matter, and, therefore, it more appropriately receives mention in the summary rather than the caption. Finally, the Attorney General explains that he chose not to mention petitioners' point in the caption because that would focus voter attention on one effect of the proposed measure, thus improperly elevating the importance of one effect over the proposed measure's other effects.

■ This court reviews the Attorney General's ballot title to determine whether it is in substantial compliance with statutory requirements. ORS 250.085(5). The caption must state or describe the proposed measure's subject matter "accurately, and in terms that will not confuse or mislead potential petition signers and voters." *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995). *Greene* also states:

> "The caption is the cornerstone for the other portions of the ballot title. As the headline for the ballot title, it provides the context for the reader's consideration of the other information in the ballot title."

*Id.* at 175 (citation omitted).

■ Because of its importance to the entire ballot title, the caption must use terms that reasonably identify the proposed measure's subject matter and do not understate or overstate the scope of the legal changes that the proposed measure would enact. For example, in *Fred Meyer, Inc. v.*

*Roberts*, 308 Or 169, 777 P2d 406 (1989), the proposed measure would have created a right to gather signatures for initiatives and referenda at shopping malls. The proposed ballot title caption stated that the proposed measure would *protect* petitioning activity. This court determined that, in that context, "the verb 'protects' could, for some voters, be misleading and does not reasonably identify the subject of the measure." *Id.* at 174. The court so held because the word "protects" implied, incorrectly, that the proposed measure simply asked the voters "to confirm the existing state of the law. In fact, the state of the law is in issue and a motivating reason for mounting this initiative effort." *Id.*

To determine the subject matter of a proposed measure, we first examine its words and the changes, if any, that the proposed measure would enact in the context of existing law. We then examine the words of the caption to determine whether they reasonably identify the proposed measure's subject matter. *See Phillips v. Myers*, 325 Or 221, 225-26, 936 P2d 964 (1997) (illustrating principle). We turn now to that analysis.

As noted, Initiative Petition 111 would enact a single maximum limit, $200 per month, on the property taxes that taxing entities may impose on a single family residence and the parcel of land on which it is located. Petitioners, using average property tax data from Multnomah County, provide the following example, which the Attorney General does not challenge, to explain the proposed measure's operation. According to petitioners, if the proposed measure passes, a property taxpayer whose residential real property has a value of $126,000 (the average assessed value of residential real property in Multnomah County) or more will pay $2,400 per year ($200 per month) in property taxes regardless of the assessed value of the property. The limitation operates in that example as a ceiling on the total amount of property taxes payable, not as a limitation either on the rate of property taxation or on the growth in assessed valuation of property. The Attorney General summarizes the proposed measure's operation in the following sentence in the ballot title summary: "Cap applies regardless of property's assessed value."

The creation of a ceiling, or "cap," of that kind on property taxes payable would represent a significant change in the method by which taxing entities levy property taxes on residential real property in Oregon. Although the web of statutory definitions and other provisions of law that govern ad valorem property taxation in Oregon is complex, the value of the property in question plays, and always has played, a role of fundamental importance in the determination of the taxpayer's tax obligation. The following brief discussion of some of the elements of Oregon's law of ad valorem property taxation demonstrates that point.

ORS 307.030(1) provides:

> "All real property within this state * * *, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion."

ORS 308.210(1) requires every county assessor to

> "proceed each year to assess the value of all taxable property within the county, except property that by law is to be otherwise assessed. The assessor shall maintain a full and complete record of the assessment of the taxable property for each year as of January 1, at 1:00 a.m. of the assessment year, in the manner set forth in ORS 308.215. Such record shall constitute the assessment roll of the county for the year."

ORS 308.215(1) requires the assessment roll that the assessor prepares to include, among other things, "[t]he real market value of the land, excluding all buildings, structures, improvements and timber thereon," "[t]he real market value of all buildings, structures and improvements thereon," and "[t]he total assessed value, maximum assessed value and real market value of each parcel of real property assessed." ORS 308.215(1)(e), (f), (i).

■■ Oregon law requires a full market valuation of all real property that is subject to ad valorem taxation. ORS 308.232 provides:

> "All real or personal property within each county not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value. Unless the property is subject to maximum

assessed value adjustment under ORS 308.149 to 308.166, the property shall be assessed at the property's assessed value determined under ORS 308.146."

ORS 309.100 provides property owners with an administrative process that allows them to seek a reduction in the assessed value of their property. Once the assessment process establishes the assessed value of the property, and the owner has exhausted any appeals of the assessment of value, authorized governmental entities levy their ad valorem taxes. *See* ORS 310.050 to 310.125 (describing tax levy procedures). In general, the taxpayer's ad valorem property tax obligation, subject to applicable exemptions and other limitations provided by law, is the product reached by multiplying the total authorized tax rate certified by the taxing entities by the assessed value of the taxpayer's property.

Article XI, section 11, of the Oregon Constitution (Ballot Measure 50) which the people adopted in 1997, created a maximum assessed value on property for ad valorem tax purposes and a limitation on increasing the property's maximum assessed value. The legislature subsequently adopted legislation to implement the 1997 constitutional provision. *See* ORS 308.142 to 308.166 (providing special definitions and method for determining maximum assessed value and assessed value in light of Article XI, section 11). Article XI, section 11b, of the Oregon Constitution (Ballot Measure 5), which the people adopted in 1990, created two categories of maximum allowable property taxes, one for schools and the other for government operations, that applied for each $1,000 of the property's real market value. Those limitations, however, do not undermine the significance of the property's assessed value in the computation of a taxpayer's ad valorem tax obligation. Properly viewed, those limitations operate on or begin from the same starting point: the value of the property that is subject to taxation.

The foregoing discussion demonstrates that imposing a ceiling on total ad valorem property taxes that, as the Attorney General agrees, applies regardless of the property's assessed value, would alter significantly the structure of ad valorem property taxation in Oregon. The shift that the proposed measure would make to the current scheme that relies

heavily on the assessed value of the affected property is, in our view, an important part of the proposed measure's subject matter. Accordingly, the caption must disclose that aspect of the proposed measure to comply substantially with ORS 250.035(2)(a).

■ We are not persuaded by the Attorney General's contention that voters will know that the proposed measure applies its tax limit to all properties regardless of value because Measure 5 and Measure 50 also created property tax limitations that, in general, did not distinguish between properties with a high or low value. We can only speculate about what Oregon voters might recall at this point about the specifics of Measures 5 and 50. ORS 250.035(2)(a) requires that the caption *identify* the proposed measure's subject matter. The proposed caption cannot identify the subject matter of the proposed measure, in the statutory sense, by assuming that voters are aware of its subject matter instead of stating it. *See Garst v. Myers*, 329 Or 529, 533-34, 992 P2d 451 (1999) (requiring modification of caption that announced "changes" in judicial election process but failed to inform voters what the changes would be).

We similarly disagree with the Attorney General's claim that the caption need not indicate that the property tax cap would apply regardless of a property's value because that feature would be merely an effect of the proposed measure that he may disclose in the summary instead. As discussed above, we have concluded that that feature goes to the heart of the proposed measure and is part of its subject matter, not merely one effect.

The Attorney General's caption properly states that the proposed measure would "cap[ ] property taxes." The caption then consumes 12 more words in describing the kind of property to which the cap would apply. As a result, the Attorney General had no words remaining with which he could describe the proposed measure's subject matter completely.

A similar problem arose in *Phillips*. In that case, the proposed measure would have created new rules for both the appointment and election of candidates to judicial office. One provision of the proposed measure would have prohibited

laws or rules limiting free speech by candidates for judicial office. The Attorney General's caption stated:

> "'AMENDS CONSTITUTION: CHANGES JUDICIAL ELECTION PROCESS; EXPANDS JUDICIAL CANDIDATES' CAMPAIGN SPEECH RIGHTS.'"

325 Or at 224. The petitioners contended that the Attorney General's caption failed to convey the breadth of the subject matter of the proposed measure. This court agreed, noting that the Attorney General should have used the allotted words to state accurately the full scope of the proposed measure's subject matter:

> "Turning to that issue, we conclude that the Attorney General's Caption fails to comply substantially with the foregoing statutory requirement, because it gives undue attention to one aspect of the proposed measure at the expense of a full description of the general subject of the measure. The proposed measure affects *appointments* to some judicial offices, as well as all *elections* for judicial office. By choosing to emphasize one of the many significant changes that the measure would make in the process of judicial *elections*, the Attorney General ran out of words to say anything about the subject of judicial appointments. The combination of highlighting one among many changes and omitting altogether coverage of part of the subject matter of the measure makes the Attorney General's Caption inadequate under the statutory standard."

*Id.* at 226 (emphasis in original).

As in *Phillips*, the caption here affords undue attention to one aspect of the proposed measure—the kind of real property to which the cap would apply—at the expense of a full disclosure of the subject matter of the proposed measure. We conclude that the omission of any coverage in the caption of part of the subject matter of the proposed measure makes the Attorney General's caption inadequate under the statutory standard.

■ Petitioners also challenge the Attorney General's "yes" vote result statement, which we repeat to aid our analysis:

> "'Yes' vote caps property taxes on single-family residential properties to $200 per month; reduces revenue

to schools, other local governments under certain circumstances."

ORS 250.035(2)(b) requires "[a] simple and understandable statement of not more than 25 words that describes the result if the state measure is approved."

Petitioners contend, for reasons already discussed in connection with the caption, that the "yes" vote result statement is insufficient because it fails to identify the full scope of the proposed measure. They argue, as they did in connection with the caption, that the "yes" vote result statement must disclose that the proposed measure's adoption would "fundamentally alter[ ] the relationship between assessed value and property taxes paid[,]" because "the cap applies regardless of the property's assessed value." The Attorney General repeats his argument, discussed above in connection with the caption, that the proposed measure would not alter the assessed value of any taxpayer's property but, instead, would place a cap on each taxpayer's residential tax assessment.

As we stated above, the Attorney General's argument understates the scope of the change that the proposed measure would effect. Although it is true that the proposed measure would not modify the assessed valuation of any property, it would apply the tax cap, as the Attorney General's summary indicates, regardless of the assessed value of the property. The result of the proposed measure, therefore, would include a significant change of the role of assessed valuation in the determination of a taxpayer's tax obligation. We conclude that the failure of the Attorney General's "yes" vote result statement to disclose that aspect of the proposed measure means that that statement does not comply with statutory requirements.

■    Petitioners also challenge the Attorney General's insertion of the phrase "under certain circumstances" in the "yes" vote result statement. Petitioners contend that the proposed measure would result in a loss of revenue for public schools and local governments and that that consequence does not rest on speculation. The Attorney General responds that the court should not speculate on the possible reduction in revenue in each taxing district if the proposed measure should pass. He asserts that the certified "yes" vote result

statement "accurately describes that revenue to schools and other local governments will be reduced if assessed taxes on any single-family residence and its underlying land total more than the equivalent of two hundred dollars per month."

Addressing the Attorney Generals's last argument first, we are unable to find the point of the Attorney General's argument expressed in the "yes" vote result statement. The "yes" vote result statement does not indicate that the circumstance that will reduce revenue to schools and other local governments is the reduction in assessed taxes on any residential property due to application of the cap in the proposed measure. If the Attorney General intended to convey that message in the "yes" vote result statement, he did not succeed in doing so. We mention the point because, when he addresses the problems with the ballot title noted above on referral, the Attorney General also may modify the "yes" vote result statement regarding the disputed phrase if he desires. *See Novick v. Myers*, 333 Or 12, 17, 35 P3d 1017 (2001) (applying same rule).

The Attorney General also argues that removal of the phrase "under certain circumstances" from the "yes" vote result statement would create the inference that the proposed measure would reduce revenue under *all* circumstances and that petitioners have not established the accuracy of that claim. Petitioners respond that this court has required the Attorney General to disclose that a proposed measure would lead to a predictable reduction in public revenue, but has not insisted on absolute proof of that fact. They rely on *Novick*, in which this court required the Attorney General to describe in a "yes" vote result statement the reduction in the General Fund that would result from adoption of the proposed measure in question. 333 Or at 17.

*Novick* is distinguishable. In *Novick*, the proposed measure would have dedicated 10 percent of income tax revenues to highway funding. This court concluded that the proposed measure necessarily would have reduced revenues in the General Fund by 10 percent and, as a consequence, also would have decreased funds available for services paid from the General Fund. *Id.* at 16. The ultimate result of the

instant proposed measure arguably is less certain. Petitioner's arguments, and some of their supporting data, would be sufficient to justify asserting that a result of the proposed measure would be a revenue reduction. However, the Attorney General also could determine reasonably that the facts about the scope of any potential revenue reduction from the proposed measure are not known fully at this time. Either position is a reasonable one under the circumstances. As a result, we conclude that use of the phrase "under certain circumstances" in the "yes" vote result statement does not violate statutory requirements.

We turn next to petitioners' challenge to the ballot title for Initiative Petition 112. For the reasons identified above, we also conclude that the Attorney General's caption and "yes" vote result statement in the ballot title for that proposed measure do not comply substantially with statutory requirements.

As a consequence of the foregoing, we refer the ballot titles for each proposed measure to the Attorney General for modification. ORS 250.085(8).

Ballot titles referred to Attorney General for modification.