Submitted on the record March 30, ballot title referred to Attorney General for modification August 2, ballot title certified August 21, 2007
(343 Or 207)

Jerry CARUTHERS
& Larry Wolf,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S54528)

166 P3d 514

Margaret S. Olney, of Smith, Diamond & Olney, Portland, filed the petition for petitioners.

Denise G. Fjordbeck, Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Gregory W. Byrne, Portland, filed a brief for *amicus curiae* Bill Sizemore.

GILLETTE, J.

**GILLETTE, J.**

This ballot title review proceeding brought under ORS 250.085(2) concerns the Attorney General's certified ballot title for a proposed initiative measure, denominated by the Secretary of State as Initiative Petition 61 (2008). The proposed measure is set forth in the margin.[1] If adopted, the measure would amend present law on ad valorem taxation of primary residences by creating an exemption to the rules ordinarily governing assessment of such properties. Under the exemption, such property would be exempt (1) from the first $100,000 of assessment if one of the owners was age 65 or older and used the property as his or her primary residence; (2) from the first $150,000 of assessment if one of the owners was 70 years of age or older and used the property as his or her primary residence; (3) from the first $200,000 of assessment if one of the owners was age 75 or older and used the property as his or her primary residence; and (4) from the

---

[1] The proposed measure reads as follows:

"BE IT ENACTED BY THE PEOPLE OF THE STATE OF OREGON; a new section shall be added to and made a part of the Oregon Revised Statutes, which section shall read:

"Section 1. **Senior citizen homestead exemption.** (a) Notwithstanding any law, ordinance or rule in existence prior to the effective date of this 2008 Act, for tax years beginning on or after January 1, 2009, the first $100,000 of assessed value of a parcel of real property shall be exempt from ad valorem property taxes, if one or more of the owners of the property is 65 years of age or older and the property is his or her primary residence. The exemption shall be $150,000, if one or more of the owners is 70 years of age or older and the property is his or her primary residence. The exemption shall be $200,000, if one or more of the owners is 75 years of age or older and the property is his or her primary residence. The exemption shall be equal to 100 percent of the assessed value of the property, if one or more of the owners of the property is 80 years old or older and the property is his or her primary residence.

"(b) The exemption established by this section shall not apply to any voter approved add-on taxes, such as serial levies, local option taxes, and taxes imposed to pay for voter-approved bonded indebtedness or the interest thereon. Beginning with the tax year 2010 and each year thereafter, the amount of the exemptions provided herein shall be increased annually by three percent.

"The state legislative assembly shall adopt legislation to insure that this section is not abused by such actions as transferring all or part of a non-qualifying person's interest in a property to a senior citizen for the purpose of avoiding taxation, while the non-qualifying person who is not a spouse of the senior citizen resides at the property."

(Boldface in original.)

full assessment value of the property if one of the owners was 80 years of age or older and used the property as his or her primary residence. The proposed measure would not apply to "any voter approved add-on taxes, such as serial levies, local option taxes, and taxes imposed to pay for voter-approved bonded indebtedness or the interest thereon." The proposed measure directs the legislative assembly to adopt legislation to avoid abuses of the ownership and residence provisions of the proposed measure.[2]

Petitioners are electors who timely submitted written comments to the Secretary of State concerning the content of the Attorney General's draft ballot title and who therefore are entitled to seek review of the resulting certified ballot title in this court. *See* ORS 250.085(2) (stating that requirement). We review the Attorney General's certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035(2)(a) to (d). ORS 250.085(5). For the reasons that follow, we conclude that the ballot title challenged here fails that test.

The Attorney General certified the following ballot title for Initiative Petition 61 (2008):

**"ESTABLISHES PROPERTY TAX EXEMPTION FOR SENIOR CITIZEN'S PRIMARY RESIDENCE; INAPPLICABLE TO SPECIFIED VOTER APPROVED TAXES**

**"RESULT OF 'YES' VOTE:** 'Yes' vote establishes a property tax exemption for primary residence of senior citizen; amount of exemption increases with age; specified voter approved taxes not included.

---

[2] This Initiative Petition 61 (2008) is identical to another proposed measure, denominated by the Secretary of State as Initiative Petition 62 (2008), except that the size of the exemptions provided in Initiative Petition 62 are smaller than those provided in Initiative Petition 61. The Attorney General has certified a ballot title for Initiative Petition 62 (2008) that is similar in all material respects to the ballot title under consideration in this case. Petitioners in this case also have challenged the Attorney General's certified ballot title respecting Initiative Petition 62 (2008). Petitioners have also challenged a third proposed initiative petition, which the Secretary of State has denominated Initiative Petition 63 (2008). That proposed measure is nearly identical to Initiative Petition 62, with the addition of a section that extends the benefits contemplated by the measure to renters and mobile home owners. *See Caruthers v. Myers (S54529),* 343 Or 171, 166 P3d 518 (2007) (dealing with objections to ballot titles for Initiative Petitions 62 and 63 (2008)).

**"RESULT OF 'NO' VOTE:** 'No' vote retains current laws regarding ad valorem residential property taxation, including potential low income deferral but no exemption for primary residence of senior citizen.

**"SUMMARY:** Establishes a property tax exemption for the primary residence owned and occupied by senior citizen, beginning in the tax years starting January 1, 2009. For a senior citizen aged 65 to 69, the exemption applies to the first $100,000 of assessed value of the property; for ages 70 to 74, $150,000; for ages 75 to 79, $200,000. The exemption would be 100 percent for property owners aged 80 and older. The exemption would not apply to any voter approved add-on taxes, such as serial levies, local options, and bond measures. The exemption would increase by 3 percent per annum from 2010. The measure directs the legislature to adopt legislation to prevent fraud in the implementation of the measure. Other provisions."

(Boldface in original.)

Petitioners challenge the caption, the "yes" result statement, and the summary in the Attorney General's certified ballot title. All their challenges have a common theme, however, and we therefore take this opportunity to summarize it.

Petitioners assert that the proposed measure, although it speaks of virtually nothing but exemptions from ad valorem tax assessments for the homes of "senior citizens," actually would have the effect of reducing local property tax revenues to a level that would cripple local schools and governments. That change to current law, petitioners assert, must be identified in all three of the specified parts of the Attorney General's certified ballot title.

We note at the outset that petitioners' underlying theory sweeps too widely. We do not deny that there might be circumstances in which it fairly could be said that a proposed measure, although written in terms of subject X, really was about subject Y. This is not such a case, however. The words of the proposed measure establish inescapably that the measure is about (and, if passed, would affect) ad valorem property taxes paid by senior citizens on their primary residences.

Petitioners rely on *Kain / Waller v. Myers*, 337 Or 36, 93 P3d 62 (2004). In that case, two proposed measures would have "capped" at a specific dollar level[3] the amount that could be collected in ad valorem property taxes on primary dwellings and on the parcels on which those dwellings were situated, without regard to the value of the property, the age of the owner, or any other criterion. Petitioners then argued, based on data that the Attorney General did not challenge, that "[t]he limitation operates * * * as a ceiling on the total amount of property taxes payable, not as a limitation either on the rate of property taxation or on the growth on the assessed valuation of property." *Id.* at 41. Faced with what was, in this court's view, not merely a far-ranging reduction in ad valorem property tax revenues but, in fact, a change in the economic basis on which such taxes in future would be imposed, this court concluded that the Attorney General could not permissibly ignore that reduction in either the caption or the "yes" result statements in the Attorney General's certified ballot titles. *Id.* at 43-44.

We do not find this case to be *Kain / Waller* revisited, however. Here, the exemption applies to a certain group of property taxpayers—far fewer than half, even by petitioners' arguments. In addition, it imposes no overall limit on the amount of property taxes that can be collected from the beneficiaries of the proposed measure, let alone from all residential property taxpayers, as did the proposed measure under consideration in *Kain / Waller*. The various property owners who otherwise would benefit from the measure remain fully liable for a number of add-on and voter-approved taxes. (That was not true in *Kain / Waller*.) We do not say that, as a result of the foregoing differences, the information that petitioners wish to have appear in the Attorney General's certified ballot title has no place in that document; we say only that the information may satisfy legal requirements if it appears somewhere besides the caption.

■　　The caption of the Attorney General's certified ballot title must "reasonably identif[y]" in 15 words or less "the subject matter of the state measure." ORS 250.035(2)(a). Petitioners argue that the caption in the present case, like the

---

[3] One measure would have capped the yearly ad valorem tax at $2,000; the other would have capped the monthly ad valorem tax at $200.

captions in *Kain / Waller*, must be modified because, petitioners assert, the proposed measure "changes" a fundamental premise of the present ad valorem property tax system—"that the tax liability is based upon the value of property."

We reject that argument as proving too much. All exemptions of any kind to ad valorem taxation must have some impact on revenue, but we do not think—and we did not hold in *Kain / Waller*—that an attempt to enact any exemption by means of the initiative or referendum requires the Attorney General to mention the potential revenue change in the caption in the initiative's ballot title. In the present case, we acknowledge that the issue is a reasonably close one. Had the Attorney General chosen to include the information for which petitioners now contend in his ballot title caption, it may even be that such a choice would have withstood a legal challenge. But there has to be some play in the joints of the ballot title writing process, if this court is to maintain its status as a law-enforcing court, rather than an editorial board. Indeed, that flexibility inheres in the "substantial compliance" standard that the legislature has established in evaluating certified ballot titles pursuant to ORS 250.085(5). We find no error in this respect.

Petitioners argue in the alternative that "[t]he other major change made by the proposal is to give senior citizens who own property a tax break, regardless of whether they are able to pay their taxes." That may be a consequence of the enactment of the measure, but we cannot say that it is in any sense the "subject matter" of the measure, which the caption must identify. Here, too, we find no error. We turn to petitioners' arguments concerning the "yes" vote result statement.

ORS 250.035(2)(b) requires that a ballot title contain a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved." The purpose of this section of the ballot title is to "notify petition signers and voters of the result or results of enactment that would have the greatest importance to the people of Oregon." *Novick / Crew v. Myers*, 337 Or 568, 574, 100 P3d 1064 (2004). Petitioners assert that, when a proposal has a clear revenue impact, that "result" must be included in

the "yes" vote result statement. They rely on *Novick v. Myers*, 333 Or 12, 35 P3d 1017 (2001).

We disagree. *Novick* was a case in which a proposed measure would have diverted 10 percent of income tax revenues from the General Fund to the Highway Fund, without providing any mechanism for replacing those lost funds. The "yes" result statement certified by the Attorney General failed to mention that result. This court held that it must do so—an outcome hardly surprising, in view of the fact that the subject matter involved was no less than 10 percent of the general fund. But this case is not comparable. There doubtless will be less ad valorem tax revenue if the measure is adopted than if it is not. But the amount of the reduction, conjectural in any event, cannot under any imaginable scenario, create the total reshaping of state government finances that would have been the inevitable outgrowth of the adoption of the proposed measure under study in *Novick*. We find no error respecting the Attorney General's certified "yes" result statement.[4]

■ This brings us to respondents' attack on the Attorney General's certified summary of the measure. ORS 250.035(2)(d) requires that the ballot title contain a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effects." Petitioners assert that the Attorney General's summary fails to meet the foregoing standard in three respects, only one of which justifies discussion. Petitioners assert that, even if it has no place elsewhere, a discussion of the fiscal impact of the measure on local tax revenues belongs in the discussion as a demonstration of the "breadth of [the proposed measure's] impact."

We agree. Although it is impossible to state with certainty the precise amount of local revenue that will be lost if the proposed measure is adopted, there can be no question that there will be a noticeable loss of revenue that will have a significant impact throughout the local government system.

---

[4] We note again, as we did respecting the caption of the Attorney General's certified ballot title, that the issue here is a relatively close one. Thus, there may not have been an error had the Attorney General chosen to include the information that petitioners desire. We here hold only that it was not legal error to omit the information in question from the "yes" result statement.

That is surely an "effect" under ORS 250.035(2)(d), even if it is not the "subject matter" of the proposed measure under ORS 250.035(2)(a) or the "result" under ORS 250.035(2)(b). *See Kain / Waller*, 337 Or at 40-44 (implicitly accepting proposition that a particular feature of a proposed measure may, depending on its prominence and centrality, be either the "subject matter" or an "effect" of that measure). The Attorney General's failure to discuss that aspect of the measure in the summary of his certified ballot title was error. ORS 250.035(2)(d); ORS 250.085(5). The ballot title must be referred to the Attorney General for modification.

Ballot title referred to Attorney General for modification.