On petition to review ballot title filed September 23, considered and under
advisement on December 2, ballot title referred to Attorney General for
modification December 24, 2009, modified ballot title certified
January 20, 2010 (347 Or 535)

Steven C. BERMAN,
*Petitioner,*

*v.*

John KROGER,
Attorney General,
State of Oregon,
*Respondent.*

(SC S057817)

223 P3d 1031

Thomas K. Doyle, Bennett, Hartman, Morris & Kaplan, LLP, Portland, filed the petition and the reply memorandum for petitioner.

Paul L. Smith, Assistant Attorney-in-Charge, Salem, filed the answering memorandum for respondent. With him on the answering memorandum were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

WALTERS, J.

**WALTERS, J.**

This ballot title review proceeding brought under ORS 250.085(2) concerns the Attorney General's certified ballot title for Initiative Petition 55 (2010). The proposed measure provides:

"Section 1. Throughout most of Oregon's History, the state was responsible for incarcerating felony criminals, and each county was responsible for incarcerating misdemeanor criminals. County jails were for misdemeanants, and state prisons were for felons. In recent years, the state has forced counties to incarcerate many convicted felons, imposing significant costs on the counties. In order to correct this abuse of state power, the People hereby enact this statute as the Oregon Sentencing Responsibility Act.

"Section 2. The state shall fully reimburse each county, on a timely basis, for the county's actual costs of presentencing incarcerations of any person convicted of a felony.

"Section 3. After sentencing for a felony conviction, the term of incarceration must be served in facilities provided or funded by the Oregon Department of Corrections. The department may rent jail space from any county, as needed, to hold persons convicted of felonies. The department and the county shall negotiate the rent under this section in an amount sufficient to reimburse the county for the actual costs of incarceration.

"Section 4. This Act applies to jail or prison time served by felons on or after July 1, 2011."

The Attorney General certified the following ballot title for Initiative Petition 55 (2010):

**"Requires all felony incarceration time to be served in state facility or state-funded facility**

**"Result of 'Yes' Vote:** 'Yes' vote requires all felony incarceration time be served in state facility or facility funded by state; state must reimburse counties for presentencing felony incarceration.

**"Result of 'No' Vote:** 'No' vote retains current law: county custody for felons pre-sentencing and for incarceration of less than one year; longer incarcerations served in state-funded facilities.

"**Summary:** Under current law, people who are incarcerated while awaiting sentencing on criminal convictions remain in county jail until sentencing is complete. If a person is sentenced to more than one year incarceration, he or she is generally transferred to a state correctional facility; any incarceration of one year or less is generally served in a county jail whether the result of a felony or a misdemeanor conviction. Measure requires state to reimburse counties for costs associated with incarcerating people convicted of felonies but not yet sentenced. Requires post-sentencing incarcerations for felony convictions be served in facilities funded by Oregon Department of Corrections (DOC). Permits DOC to rent jail space for counties, as needed. Measure does not provide revenue source for additional expenditures. Other provisions."

Petitioner is an elector who timely submitted written comments to the Secretary of State concerning the content of the draft ballot title. Petitioner challenges both the caption and the "yes" vote result statement. He contends that the primary subject matter of the measure and the major effect of the measure if it is approved is the state's increased responsibility for the costs of felony incarceration. That new funding obligation, petitioner argues, must be identified clearly and directly, both in the caption and in the "yes" vote result statement. Further, petitioner contends that to explain that obligation adequately, the caption and "yes" vote result statement must indicate that measure approval would reduce state funds available for other services.

The Attorney General responds that the subject matter of the proposed measure is "felony incarceration." As to the funding requirement, the Attorney General argues that "[a]ny resulting effect on the state budget is not, strictly speaking, part of the subject matter." In the Attorney General's view, the caption is correct and the "yes" vote result statement is adequate.

■ The caption must "reasonably identif[y] the subject matter of the state measure." ORS 250.035(2)(a). The "yes" vote result statement must "describe[ ] the result if the state measure is approved." ORS 250.035(2)(b). For the reasons that follow, we agree with petitioner's primary contention that the caption and the "yes" vote result statement must

state more directly the subject of the measure and the result if the measure is approved, *viz.*, an increase in the state's fiscal responsibility for felony incarceration. However, we disagree with petitioner's additional contention that the Attorney General must state the effect of that obligation on other state services.

We have not been able to determine, either from information provided by the parties or from our own independent review of the statutes, the precise manner in which the state and Oregon's 36 counties presently share costs associated with incarcerating accused and convicted felons. However, we can state with clarity how those costs would be dealt with under the proposed measure.

The proposed measure changes current law. It consists of four short sections. Section 1 states the purpose of the measure. It recites that, "[i]n recent years, the state has forced counties to incarcerate many convicted felons, *imposing significant costs on the counties.*" (Emphasis added.) The stated purpose of the measure is to "correct this abuse." Sections 2 and 3, the operative provisions of the measure, are consistent with that stated purpose. Those sections impose on the state fiscal responsibility for the pre- and post-sentence costs of incarcerating persons convicted of felonies. Those sections mandate that the state bear the cost of felony incarceration, regardless where the inmate actually is housed.

Thus, the focus of the proposed measure is not on where those who are convicted of felonies must serve their time, but rather on the transfer of fiscal responsibility from counties to the state and the imposition on the state of responsibility for the costs of felony incarceration. The Attorney General of course is correct that the general subject matter of the measure is "felony incarceration" and that the proposed measure accomplishes the shift in fiscal responsibility by referring to the place where convicted felons must serve their sentences. However, the "subject matter" of the proposed measure lies between that general description of its nature and the means chosen to accomplish its purpose. To state correctly the subject matter of the measure, the caption must point citizens not to the place of felony incarceration,

but to its cost and, more particularly, to the entity that must accept the fiscal responsibility for that cost if the measure is approved. Moreover, the caption must advise citizens that the measure increases, or adds to, the state's existing fiscal obligations.

The "yes" vote result statement similarly misdirects the voters' attention to the place of incarceration, rather than to the increase in the state's obligation to pay the cost of incarceration. The result of a "yes" vote is to require that the state assume the cost of incarcerating persons convicted of felonies and not merely share those costs with the counties.

The Attorney General argues that this is not a case, like *Novick v. Myers*, 333 Or 12, 17, 35 P3d 1017 (2001), in which the effect that the proposed measure would have on the state budget is so clear that it should be included in the "yes" vote result statement. The Attorney General contends that this case is more like *Caruthers v. Myers*, 343 Or 162, 169, 166 P3d 514 (2007), in which this court concluded that the "yes" vote result statement need not include an express statement of the impact of the proposed measure on the state General Fund. We disagree. In those cases, the issue was not whether a ballot title must disclose the existence of a new or increased funding obligation, but whether a ballot title must identify the effect of a measure on the state General Fund. Those cases do not affect our conclusion that petitioner's primary argument is well taken.

■ On the other hand, the cases cited by the Attorney General do address petitioner's secondary argument, *viz.*, that the caption or "yes" vote result statement must include the phrase "reduces state funds available for other services" or otherwise convey that concept. In this case, the proposed measure and its effect on the state General Fund are closer to the measure and effect at issue in *Caruthers* than to the measure and effect at issue in *Novick*. Unlike the measure in *Novick*, this measure does not divert a specified percentage of the state General Fund from one purpose to another without replacing the lost funds. Although it is obvious that the increased obligation that this measure imposes will reduce the funds available to meet other state obligations, the significance of that impact on the state General Fund is not so

clear as to oblige the Attorney General to explain it in the caption or "yes" vote result statement.

The ballot title is referred to the Attorney General for modification.