On petitions to review ballot title and explanatory statement filed October 28; considered and under advisement November 5, ballot title referred to Attorney General for modification; explanatory statement certified to Secretary of State November 13, 2009

Pat McCORMICK
and Sharon Livingston,
*Petitioners,*

*v.*

John KROGER,
Attorney General of the State of Oregon,
*Respondent.*

(SC S057931 (Control))

Pat McCORMICK
and Sharon Livingston,
*Petitioners,*

*v.*

Senator Richard DEVLIN,
Senator Chris Telfer,
Senator Diane Rosenbaum,
Representative Arnie Roblan,
Representative Vicki Berger,
Representative Chris Garrett,
and Kate Brown,
Secretary of State of the State of Oregon,
*Respondents.*

(S057932)
(Cases Consolidated)

220 P3d 412

Gregory A. Chaimov and John A. DiLorenzo, Jr., Davis Wright Tremaine LLP, Portland, filed the petitions and reply memoranda for petitioners.

Paul S. Cosgrove, Lindsay, Hart, Neil & Weigler LLP, Portland, filed the brief for respondents Senator Chris Telfer and Representative Vicki Berger.

Erin C. Lagesen, Assistant Attorney General, Salem, filed the answering memoranda for respondents John R. Kroger, Kate Brown, Senator Richard Devlin, Senator Diane Rosenbaum, Representative Arnie Roblan, and Representative Chris Garrett. With her on the answering memoranda were

John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Steven C. Berman, Portland, filed the memorandum for *amici curiae* Steve Novick and Defend Oregon—Yes for Tax Fairness.

DURHAM, J.

## DURHAM, J.

Petitioners have filed separate petitions in this court seeking review of the ballot title and of the explanatory statement for Referendum 301 (2010), which the Secretary of State has denominated as Ballot Measure 66.[1] We consolidate the petitions for purposes of this opinion.

Ballot Measure 66 results from a referendum of House Bill (HB) 2649 (2009), which increased certain personal income taxes effective for the 2009 tax year to raise revenue that the legislature budgeted for education, human services, public safety, and other public services. Or Laws 2009, ch 714. Because of the referendum, as we explain below, HB 2649 (2009) did not take effect. Ballot Measure 66, if approved by the voters, would enact the increased personal income taxes that the Legislative Assembly adopted in HB 2649 (2009).

## I. BALLOT TITLE REVIEW

We begin with petitioners' challenges to the ballot title. We review the ballot title for "substantial compliance with the requirements of ORS 250.035." Or Laws 2009, ch 714, § 12(4). During the 2009 session, the legislature modified the procedures that govern preparation of the ballot title and this court's review of ballot title challenges for Ballot Measure 66. Or Laws 2009, ch 714, §§ 9, 12. Among other changes, the legislature provided that the ballot title for Ballot Measure 66 shall be prepared by a joint legislative committee and that "[t]he word limits described in ORS 250.035(2) do not apply to a ballot title prepared by the joint legislative committee under this subsection." *Id.* § 9(1). Additionally, if this court determines, after review, that the ballot title prepared by the joint legislative committee does not substantially comply with the requirements of ORS 250.035, this court "shall refer the ballot title to the Attorney General for modification." *Id.* § 12(6).

---

[1] Article IV, section 3(a), of the Oregon Constitution, provides:

"The people reserve to themselves the referendum power, which is to approve or reject at an election any Act, or part thereof, of the Legislative Assembly that does not become effective earlier than 90 days after the end of the session at which the Act is passed."

In response to those requirements, a joint legislative committee prepared and filed with the Secretary of State the following ballot title for Ballot Measure 66:

"**RAISES TAX ON HOUSEHOLD INCOME AT AND ABOVE $250,000 (AND $125,000 FOR INDIVIDUAL FILERS). REDUCES INCOME TAXES ON UNEMPLOYMENT BENEFITS IN 2009. MAINTAINS FUNDS CURRENTLY BUDGETED FOR EDUCATION, HEALTH CARE, PUBLIC SAFETY, OTHER SERVICES.**

"**RESULT OF 'YES' VOTE**: 'Yes' vote raises tax on income at and above $250,000 for households, $125,000 for individual filers. Tax rate increases 1.8 percentage points on amount of taxable income between $250,000 and $500,000, 2 percentage points on amount above $500,000 for households. For individual filers, the rate increases begin at $125,000 and $250,000 respectively. Eliminates income taxes on the first $2,400 of unemployment benefits received in 2009. Raises estimated $472 million to maintain funds currently budgeted for education, health care, public safety, other services.

"**RESULT OF 'NO' VOTE**: 'No' vote rejects tax changes on income at and above $250,000 for households, $125,000 for individual filers. Rejects tax exemption for first $2,400 of unemployment benefits received in 2009. Reduces funding currently budgeted for education, health care, public safety, other services by estimated $472 million.

"**SUMMARY**: Under current law, a marginal tax rate of 9% applies to taxable household income over $15,200 (or $7,600 for individual filers), taxpayers may deduct federal income taxes paid, and unemployment compensation is taxable. Measure eliminates income taxes on first $2,400 of unemployment benefits received in 2009. For tax years 2009-2011, the measure increases tax rate 1.8 percentage points on amount of household income between $250,000 and $500,000, by 2 percentage points on amount above $500,000 (for individual filers, rate increases begin at $125,000 and $250,000, respectively). For the tax year beginning 2012, the tax rate for households with income above $250,000 (above $125,000 for single filers) will drop to 9.9%. Measure does not increase tax rate on household income below $250,000 (below $125,000 for individual filers). For households with adjusted gross income at or above

$250,000 (or $125,000 for individual filers), reduces federal income tax deduction. Raises $472 million to maintain funds currently budgeted for education, health care, public safety, other services. Because some state money brings in federal matching funds, Oregon will likely receive more federal money if measure passes than if it fails. Other provisions."

Petitioners are electors who are dissatisfied with the ballot title prepared by the joint legislative committee for Ballot Measure 66 and, therefore, are entitled to petition this court seeking a different ballot title. *Id.* § 12(1). Petitioners contend that, for several reasons, each segment of the ballot title fails to comply substantially with statutory requirements. In response, the Attorney General argues that the ballot title complies in all respects with statutory requirements. We discuss four of petitioners' challenges.

■  The caption of a ballot title must reasonably identify the "subject matter" of a state measure. ORS 250.035(2)(a). Petitioners focus on the following phrase in the caption: "MAINTAINS FUNDS CURRENTLY BUDGETED FOR EDUCATION, HEALTH CARE, PUBLIC SAFETY, OTHER SERVICES." They argue that Ballot Measure 66 does not purport to "maintain[ ] funds currently budgeted" for the listed public services because the legislation authorizing increased taxation is subject to a referendum and, as a consequence of Article IV, section 1(4)(d), of the Oregon Constitution,[2] the legislation did not take effect. According to petitioners, the referendum, if approved, would authorize the collection of additional or new revenue, but it does not "maintain[ ]" any currently budgeted revenue. They assert that, in suggesting that the measure would "maintain[ ]" funds, the caption inaccurately states the subject matter of the measure.

The Attorney General responds that the phrase "[m]aintains funds currently budgeted" is both accurate and

---

[2] Article IV, section 1(4)(d), of the Oregon Constitution, provides:

"Notwithstanding section 1, Article XVII of this Constitution, an initiative or referendum measure becomes effective 30 days after the day on which it is enacted or approved by a majority of the votes cast thereon. A referendum ordered by petition on a part of an Act does not delay the remainder of the Act from becoming effective."

properly included in the caption. The Attorney General emphasizes that the legislature approved its current budget with the additional tax revenue in mind and passed HB 2649, providing for the tax increases that would generate the new revenue needed to balance the budget. Additionally, *amici curiae* argue that petitioners read the phrase "[m]aintains funds" out of context, stressing the significance of the phrase "currently budgeted for * * *." According to *amici curiae*, the phrase "[m]aintains funds currently budgeted for" does not assume that the described tax funds have been received or that the tax provisions have taken effect.

■ We agree with petitioners. The terms of a ballot title that state or imply the law that the proposal would enact must describe that law accurately. *Novick/Bosak v. Myers*, 333 Or 18, 24, 36 P3d 464 (2001). The term "maintains" in the phrase "maintains funds currently budgeted for" incorrectly describes the operative effect of Ballot Measure 66 in the context of existing law. Because the referendum measure, by operation of Article IV, section 1(4)(d), of the Oregon Constitution, will become effective only if the voters enact it, the measure will not "maintain" the revenue that the proposed tax increases will produce. Rather, an approval of the measure will *provide* the additional revenue.

The issue that the voters must address is whether to approve, and thereby provide, the funds currently budgeted for education, health care, public safety, and other services. The term "maintains," in context, implies inaccurately that funds necessary for the described services already are legally available and that disapproval of the measure will nullify currently available revenue.

To remove the inaccuracy that we have noted, and to insure substantial compliance with statutory requirements, the term "maintains" should be stricken from the caption, and it should be replaced by the term "provides." The Attorney General must effect those changes on referral.

■ Petitioners point out that the word "maintain" also appears in the "yes" vote result statement and the summary, and that it creates the same misleading inference in those parts of the ballot title. The "yes" vote result statement must be a "simple and understandable statement * * * that

describes the result if the state measure is approved." ORS 250.035(2)(b). The summary is a "concise and impartial statement * * * summarizing the state measure and its major effect." ORS 250.035(2)(d).

The "yes" vote result statement states, in part: "Raises estimated $472 million to *maintain* funds currently budgeted for education, health care, public safety, other services." (Emphasis added.) The summary states, in part: "Raises $472 million to *maintain* funds currently budgeted for education, health care, public safety, other services." (Emphasis added.)

We agree with petitioners' objection. Although those passages in the "yes" vote result statement and summary are not identical to the challenged phrase in the caption that we have discussed and, in context, are somewhat more accurate in describing the measure, the term "maintain" still creates the same erroneous inference in those parts as well.

To cure that problem and to bring the "yes" vote result statement and summary into substantial compliance with statutory requirements, the term "maintain" must be stricken and replaced by the word "provide." The Attorney General must effect those changes on referral.

■          Petitioners also contend that the following clause in the "no" vote result statement is inaccurate:

> "*Reduces* funding currently budgeted for education, health care, public safety, other services by estimated $472 million."

(Emphasis added.) The "no" vote result statement is a "simple and understandable statement * * * that describes the result if the state measure is rejected." ORS 250.035(2)(c). According to petitioners, the term "reduces" in that clause incorrectly describes the result of a rejection of the measure for reasons that mirror their challenges to the terms "maintains" and "maintain" in the other parts of the ballot title that we have discussed above. Consistent with those arguments, petitioners contend that a rejection of the proposed measure will not "reduce" funding currently budgeted because, as a result of the referendum, the additional funding for the listed services has not been approved or enacted in the legal sense.

For that reason, they argue, a rejection of the measure, correctly understood, will leave the legislature's approved budget for the affected public services out of fiscal balance by the estimated sum of $472 million.

The Attorney General responds that the phrase "[r]educes funding currently budgeted" is accurate. According to the Attorney General, the legislature's revenue measure, HB 2649, is the predicate for the legislature's current budget. Consequently, a rejection by the voters of Ballot Measure 66 will nullify the new revenue provisions in HB 2649 (2009) and, thereby, "reduce" funding that the legislature currently has budgeted.

We agree with petitioners. The term "reduces" in the phrase "[r]educes funding currently budgeted" creates an inference that a rejection of the measure by the voters will nullify an available source of revenue. But, as our discussion of the term "maintain" indicated, one consequence of the referendum on HB 2649 is that the new revenue provisions do not take effect unless the voters approve them. Thus, a rejection of the measure by the voters will not reduce funding. Rather, a rejection of the measure will leave the legislature's budget with insufficient funding to pay for the affected public services. We do not agree with the Attorney General's premise that the words "currently budgeted" will adequately convey that important distinction to most voters.

When the legislature provides insufficient revenue to pay for the public services that its budget describes, the legislature's approved budget is underfunded. *See Merriam-Webster's Collegiate Dictionary* 1363 (11th ed 2004) (defining "underfund" as "to provide insufficient funds for."). A rejection of Ballot Measure 66 by the voters will leave the legislature's budgeted services underfunded, but will not "reduce" funding for those services.

To correct the shortcoming that petitioners have identified, and to bring the "no" vote result statement into substantial compliance with statutory requirements, the clause in question in the "no" vote result statement must be modified to state:

"Leaves amount currently budgeted for education, health care, public safety, other services underfunded by estimated $472 million."

The Attorney General must effect that modification on referral.

Petitioners assert a number of additional challenges to the ballot title. We have considered each challenge, but, in applying the substantial compliance standard of review, we conclude that no further changes to the ballot title are necessary. We will refer the ballot title to the Attorney General for modification for the reasons discussed above.

## II.   EXPLANATORY STATEMENT REVIEW

ORS 251.215(1) requires a committee appointed under ORS 251.205 to "prepare and file with the Secretary of State, an impartial, simple and understandable statement explaining" any state measure to be submitted to the people. The legislature enacted certain modifications to the procedures that generally govern the preparation of the explanatory statement for Ballot Measure 66. For example, in lieu of the procedure described in ORS 251.205(2), providing for appointment of a committee of citizens to prepare the explanatory statement, Oregon Laws 2009, chapter 714, section 9(2), provides that the explanatory statement in this circumstance shall be drafted by a joint legislative committee.

A joint legislative committee prepared and filed with the Secretary of State an explanatory statement for Ballot Measure 66. Petitioners seek review of that explanatory statement, asserting that it is "insufficient or unclear" under Oregon Laws 2009, chapter 714, section 13(1). Subsection (2) of that section provides that, if a petition challenging the joint legislative committee's explanatory statement is properly filed and served, this court "shall review the statement and certify an explanatory statement to the Secretary of State * * *."

The legislature, in providing for explanatory statement review in this court, did not modify the statutory standard under which this court has reviewed explanatory statements in other cases. *See* ORS 251.235(1) (authorizing any dissatisfied person to petition this court "seeking a different

statement and stating the reasons the statement filed with the court is insufficient or unclear"). Thus, in reviewing the explanatory statement for Ballot Measure 66,

"[o]ur task is to determine whether the explanatory statement contains a sufficient and clear statement explaining the measure."

*Sizemore v. Myers*, 327 Or 456, 459, 964 P2d 255 (1998). We turn to that issue.

■       A joint legislative committee prepared the following explanatory statement for Ballot Measure 66:

"**EXPLANATORY STATEMENT**: Measure 66 establishes new marginal state income tax rates for households with income over $250,000 a year, and individual filers with income over $125,000 a year beginning in tax year 2009. The Measure would not increase taxes on household income under $250,000 (or $125,000 for individual filers). The Measure would exempt from income taxes the first $2,400 in unemployment compensation received in 2009. The Measure would raise approximately $472 million, which would maintain funds currently budgeted for education, health care, public safety and other services. Approximately 90% of the state general fund budget goes to education, health care and public safety.

"Under current law, unemployment compensation benefits are taxable income. The Measure eliminates income taxes on the first $2,400 of unemployment benefits received in 2009, so that individuals who received unemployment compensation in 2009 will have not to pay state income taxes on those benefits.

"Under current law, a marginal tax rate of 9% applies to taxable household income over $250,000 a year, and individual filers with income over $125,000 a year. Measure 66 increases the marginal tax rate by 1.8 percentage points on household income between $250,000 and $500,000 and by 2 percentage points on household income above $500,000. For individual filers, the marginal tax rate increase of 1.8 percentage points begins for income over $125,000 and the 2 percentage points increase begins for income above $250,000. For the tax year beginning 2012, the tax rate for households with income above $250,000 and $125,000 for individual filers will drop to 9.9%. The Measure also phases

out the federal income tax deduction for households with adjusted gross income at or above $250,000 and individuals with income at or above $125,000. Income tax rates will not increase on household income under $250,000 and individual income under $125,000.

"Because some state money brings in federal matching funds, the state is likely to receive more federal money if the Measure passes than if the Measure fails."

Petitioners are dissatisfied with that explanatory statement for numerous reasons. The Attorney General argues that the joint legislative committee's explanatory statement is "an impartial, simple and understandable statement explaining the measure[,]" within the meaning of ORS 251.215(1), and urges the court to certify the explanatory statement to the Secretary of State without modification.

Petitioners focus one of their objections on the following sentence in the explanatory statement:

"The Measure would raise approximately $472 million, which would *maintain funds currently budgeted for* education, health care, public safety and other services."

(Emphasis added.) As petitioners argued with respect to the ballot title, they contend that the term "maintain" in the emphasized passage of the explanatory statement will mislead voters because the new revenue provisions in HB 2649 have not taken effect due to the referendum and, therefore, the proposed measure does not "maintain" those new sources of revenue.

The Attorney General argues that the legislature did pass HB 2649, which contains the new revenue provisions, and "designed the current budget around it."

We agree with petitioners for reasons that we explained in requiring modification of several parts of the ballot title that exhibited the same problem. The use of the term "maintain" in the emphasized passage quoted above renders the explanatory statement insufficient and unclear. To resolve that deficiency, we will replace the word "maintain" with the correct word, "provide," in the explanatory statement.

We have examined petitioners' other challenges to the explanatory statement and the Attorney General's responses. We do not discuss the details of the parties' contentions concerning those additional challenges. We conclude that none of petitioners' other challenges is well-taken. Pursuant to Oregon Laws 2009, chapter 714, section 13(2), we certify the following explanatory statement to the Secretary of State:

"**EXPLANATORY STATEMENT**: Measure 66 establishes new marginal state income tax rates for household with income over $250,000 a year, and individual filers with income over $125,000 a year beginning in tax year 2009. The Measure would not increase taxes on household income under $250,000 (or $125,000 for individual filers). The Measure would exempt from income taxes the first $2,400 in unemployment compensation received in 2009. The Measure would raise approximately $472 million, which would provide funds currently budgeted for education, health care, public safety and other services. Approximately 90% of the state general fund budget goes to education, health care and public safety.

"Under current law, unemployment compensation benefits are taxable income. The Measure eliminates income taxes on the first $2,400 of unemployment benefits received in 2009, so that individuals who received unemployment compensation in 2009 will have not to pay state income taxes on those benefits.

"Under current law, a marginal tax rate of 9% applies to taxable household income over $250,000 a year, and individual filers with income over $125,000 a year. Measure 66 increases the marginal tax rate by 1.8 percentage points on household income between $250,000 and $500,000 and by 2 percentage points on household income above $500,000. For individual filers, the marginal tax rate increase of 1.8 percentage points begins for income over $125,000 and the 2 percentage points increase begins for income above $250,000. For the tax year beginning 2012, the tax rate for households with income above $250,000 and $125,000 for individual filers will drop to 9.9%. The Measure also phases out the federal income tax deduction for households with adjusted gross income at or above $250,000 and individuals with income at or above $125,000. Income tax rates will not

increase on household income under $250,000 and individual income under $125,000.

"Because some state money brings in federal matching funds, the state is likely to receive more federal money if the Measure passes than if the Measure fails."

The ballot title is referred to the Attorney General for modification.

The explanatory statement is certified to the Secretary of State.[3]

---

[3] Chief Justice Order No. 09-061 (Oct 29, 2009) provides as follows in regard to these proceedings:

"Notwithstanding ORAP 11.30(12), any petitions for reconsideration must be filed and physically received by the Office of the Appellate Court Administrator no later than 12:00 noon on the day following issuance of the Court's decision."