364　　　　　　　　May 8, 2014　　　　　　　No. 29

IN THE SUPREME COURT OF THE
STATE OF OREGON

Frank DIXON,
*Petitioner,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

S062043 (Control)

Mark FROHNMAYER
and David Frohnmayer,
*Petitioners,*

*v.*

Ellen ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

S062046

En Banc

On petitions to review ballot title filed February 14, 2014; considered and under advisement on April 8, 2014.

Roy Pulvers, Holland & Knight, LLP, Portland, filed the petition and response for petitioner Dixon.

Gregory A. Chaimov, Davis Wright Tremaine, LLP, Portland, filed the petition and response for petitioners Frohnmayer.

Matthew J. Lysne, Senior Assistant Attorney General, Salem, filed the answering memorandum. With him on the memorandum were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

LANDAU, J.

Ballot title referred to Attorney General for modification.

**LANDAU, J.**

Petitioners seek review of the ballot title for Initiative Petition 38 (2014) (IP 38), arguing that the ballot title does not satisfy the requirements of ORS 250.035(2). We review a certified ballot title to determine whether it substantially complies with those statutory requirements. ORS 250.085(5). For the reasons that follow, we refer the ballot title to the Attorney General for modification.

IP 38, if adopted, would alter the Oregon primary election process for certain partisan offices, denominated "voter choice offices." Those offices are United States Senator, Congressional Representative, Governor, Secretary of State, State Treasurer, Attorney General, state Senator, state Representative, and any state, county, city, or district partisan office for which the law currently authorizes political party nominations to the general election. Under current law, major parties nominate candidates to the general election through party primaries. Minor parties and independents nominate their candidates directly to the general election ballot. Under IP 38, all candidates for affected partisan offices—whether from a major party, a minor party, or an independent—would appear on a primary ballot. Every voter then would be authorized to vote for one or more of the candidates for each office. Specifically, the proposed measure provides that "[a] voter may vote for as many of the listed candidates as the voter chooses, and in so doing may cast votes for more than one candidate for a single *** office, provided that the voter may not cast more than one vote for any individual candidate." The two candidates who receive the greatest number of votes for each office would then "be the sole candidates who advance to the general election."

IP 38 also would alter the way ballots are to be printed in primary elections. If passed, the measure would require election clerks to print on primary and general election ballots the name of each candidate, followed by his or her political affiliation, if any, and the name of any major or minor party that has officially endorsed the candidate.

In addition, IP 38 would modify the process for filling vacancies in partisan offices. In particular, it would

eliminate the current requirement that a person filling a vacancy be affiliated with the same political party as that of the person leaving office.

IP 38 would modify the election process in other less significant ways, as well, by changing the process by which minor political parties qualify, and setting the dates for primary and general elections.

The Attorney General certified the following ballot title for IP 38:

> **"Changes general election nominating process: provides one common primary ballot; unlimited votes; top two advance**
>
> **"Result of 'Yes' Vote:**   'Yes' vote replaces current general election nomination process for most partisan offices; all candidates listed on common primary ballot; vote one or more; two advance.
>
> **"Result of 'No' Vote:**   'No' vote retains current general election nomination processes: party primaries for major parties; no common primary ballot; vote limitations; multiple candidates on general election ballot.
>
> **"Summary:**   Currently, voters are limited to voting for one candidate for each office in primary elections; multiple candidates may appear for each office on general election ballot. Major parties nominate candidates through party primaries with separate ballots for each. Measure replaces that system for most partisan offices, including many federal (not presidential), all state, county, city, district partisan offices, Primary ballot will list all candidates for each office. Voters may vote for as many candidates as they like for each office, regardless of party affiliation of voter/candidate. Only top two candidates will appear on general election ballot; may be from same party. Primary, general election ballots must contain candidates' party registration/ endorsements. Eligible person, regardless of party, may be selected to fill vacancy. Other provisions.

Two sets of petitioners challenge the certified ballot title. In case number S062043, petitioner is Frank Dixon, an elector of the state who timely submitted written comments to the Attorney General's draft ballot title and is therefore entitled to seek review of the certified ballot title.

*See* ORS 250.085(2) (stating that requirement). In case number S062046, petitioners Mark Frohnmayer and David Frohnmayer are likewise electors of the state who timely submitted written comments to the Attorney General's draft ballot title and are entitled to seek review, as well. *Id.* Those petitioners collectively advance a number of challenges to the certified ballot title for IP 38. We write to address five of those challenges.

First, petitioner Dixon contends generally that, because IP 38 is similar to Ballot Measure 65 (2008), a previous ballot measure concerning so-called "open primaries," and because this court certified a ballot title for Measure 65 in *Keisling/Lutz v. Myers*, 343 Or 379, 171 P3d 345 (2007), the ballot title for that previous measure should be "presumed to be proper." Accordingly, Dixon argues, the ballot title for IP 38 "should track the ballot title for Measure 65 (2008) to the extent practicable."

We reject that contention. ORS 250.035(2) sets out various requirements for a ballot title's caption, "yes" and "no" vote result statements, and summary. Under ORS 250.085(5), we review an Attorney General's certified ballot title for "substantial compliance" with those requirements. Any number of different ballot titles for the same measure could satisfy that statutory standard. And a ballot title that is not necessarily the "best," in terms of meeting the requirements of ORS 250.035(2), still may substantially comply with those requirements. As this court explained in *Caruthers v. Myers*, 343 Or 162, 166 P3d 514 (2007), the fact that the Attorney General could have produced a better ballot title is beside the point. *Id.* at 168. "[T]here has to be some play in the joints of the ballot title writing process," the court explained, "if this court is to maintain its status as a law-enforcing court, rather than an editorial board." *Id.* As a result, merely because this court may have concluded that a given certified ballot title met the substantial compliance standard does not mean that a subsequent ballot title for a similar measure is required to "track" the one previously approved.

Second, both sets of petitioners contend that the caption does not comply with the requirements of

ORS 250.035(2)(a) because it refers to "unlimited votes." According to petitioners, that phrase is confusing and misleading, if not outright incorrect. It implies that, under the current nomination system, votes are in some unexplained sense "limited." Moreover, it states that, under IP 38, votes in primary elections will be in some unexplained sense "unlimited," when, in fact, the number of votes that an elector may cast is limited by the number of candidates.

The Attorney General responds that the use of the phrase "unlimited votes" is neither inaccurate nor misleading. According to the Attorney General, "[v]oters are unlikely to conclude from reading the caption that they may vote an unlimited number of times for any one candidate, or that there will be multiple elections[.]"

ORS 250.035(2)(a) requires the caption of a certified ballot title to "identify[y] the subject matter of the * * * measure." To comply with that standard, case law requires that the caption "state or describe the proposed measure's subject matter 'accurately, and in terms that will not confuse or mislead potential petition signers and voters.'" *Kain/Waller v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004) (citation omitted). A caption that misstates or inaccurately describes the subject of a measure does not substantially comply with that standard. *Lavey v. Kroger*, 350 Or 559, 564, 258 P3d 1194 (2011).

In this case, the caption states that the subject matter of IP 38 is changes to the "general election nominating process" and that those changes include "unlimited votes." The problem with that part of the caption is that nothing in IP 38 refers to "unlimited votes." To the contrary, IP 38 would afford each elector a limited number of votes for each office, depending on the number of candidates running for that office. As we have noted, the proposed measure expressly states that "the voter may not cast more than one vote for any individual candidate." The caption is inaccurate. As a result, the ballot title must be referred to the Attorney General for modification.

Third, petitioner Dixon contends that the caption does not comply with ORS 250.035(2)(a) for the additional

reason that it refers only to changes to the general election nominating process. According to Dixon, by referring only to changes to the nominating process, the caption is fatally underinclusive, as IP 38 would require significant changes to the general election process, as well. In support of that argument, petitioner Dixon relies on this court's decision in *Keisling/Lutz*, in which he contends the court found a similar flaw in the ballot title for Measure 65. The Attorney General contests petitioner Dixon's reading of *Keisling/Lutz*, arguing that the decision found the ballot title at issue flawed for an entirely different reason.

As we have noted, ORS 250.053(2)(a) requires a ballot title caption to identify the "subject matter" of a measure, and case law explains that the identification of that subject matter must be accurate. *Lavey*, 350 Or at 564. One way that a caption may be "inaccurate" for the purposes of ORS 250.035(2)(a) is by being "underinclusive." A caption is underinclusive when it identifies the subject matter of a measure by mentioning only some of its aspects, while leaving other, "major aspects" of the measure unmentioned. *Kain v. Myers*, 336 Or 116, 121, 79 P3d 864 (2003). As this court explained in *Towers v. Myers*, 341 Or 357, 361, 142 P3d 1062 (2006), "[w]hen the Attorney General chooses to describe the subject matter of a proposed measure by listing some of its effects, he [or she] runs the risk that the caption will be underinclusive and thus inaccurate."

In *Keisling/Lutz*, this court addressed that problem in the context of a challenge to a ballot title for Measure 65. Because the parties' arguments in this case turn on the interpretation and application of that decision, we describe it in some detail. The court summarized the effect of the measure at issue in *Keisling/Lutz* as follows:

> "If adopted, the proposed measure would change the Oregon primary election process, replacing the system now in use with one in which all candidates for a particular office appear on a single primary ballot. All voters then would choose whomever they favor for the office (rather than whomever they favor as a candidate of *their party* for the office) from that single primary ballot. Thereafter, the two persons who receive the highest number of votes in the

primary voting would move on to the general election ballot, without regard to the party affiliation (or lack of affiliation) of either."

343 Or at 382 (emphasis in original). The Attorney General certified a ballot title that included the caption: "Changes partisan primaries: Primary ballots contain all candidates; top two candidates proceed to general election." *Id.* at 383.

The petitioners challenged the ballot title caption. According to the petitioners, the measure applied not only to partisan primaries, but also to nominations of minor parties and independent candidates. By describing the measure solely in terms of changes to "partisan primaries," they argued, the caption was underinclusive and, thus, inaccurate. *Id.* at 384-85.

This court agreed. The court explained that, under the existing election scheme, candidates for minor parties and independent candidates do not participate in partisan primary elections. The ballot measure, however, would change that. Yet, the court observed, the ballot title caption stated only that the measure "changes partisan primaries." The court noted that, "[t]here is neither any direct reference to minor parties and independent candidates in that phrase, nor—in our reading of it—any suggestion that the proposed measure extends to those topics." *Id.* at 385. Because of that omission, the court concluded, the ballot title had to be referred to the Attorney General for modification. *Id.* at 385-86.

The court went on to identify "one other shortcoming" of the certified ballot title. The court explained that, while the ballot title caption mentioned only changes to "partisan primaries,"

"[t]he change that would be wrought by the proposed measure would significantly alter the appearance of the general election ballot—and, necessarily, any election held under it. The current system permits many candidates for a position to appear on the general election ballot, in addition to the two candidates of the major political parties. The traditional Oregon election lists the candidacy of minority party and independent candidates who have achieved a place on the ballot through an alternative nomination process. If

the proposed measure is adopted, the general election will offer two candidates only."

*Id.* at 386 (citations omitted).

In this case, petitioner Dixon contends that the certified ballot title caption for IP 38 suffers a similar defect, given that it mentions only changes to the "general election nomination process," in the singular, when it actually would affect multiple processes, *viz.*, "the existing process for political parties, *and* the existing nominating process for minor parties and nonaffiliated voters, *and* the general election itself." (Emphasis in original.) According to petitioner Dixon, the caption would meet the statutory standard if it stated that IP 38 "[c]hanges both general election and nomination processes."

That argument presents a closer question. Certainly, the caption that petitioner Dixon proposes is accurate and perhaps in some sense "better" than the one that the Attorney General certified. But that is not the standard that we apply. As we have explained, under ORS 250.085(5), our task is to review the certified ballot title for "substantial compliance" with statutory requirements.

In this case, on the one hand, it is true that IP 38 would affect multiple processes, as petitioner Dixon describes them. But, on the other hand, it also is entirely accurate to refer to all of those multiple processes collectively as the "general election nominating process." In that sense, there is nothing inaccurate or underinclusive about the certified ballot title caption in using that phrase.

In that regard, *Keisling/Lutz* is distinguishable. In that case, the ballot title caption referred only to changes to "partisan primaries," which failed completely to describe a number of the measure's significant effects. In this case, the ballot title caption refers to changes to the "general election nominating process," which captures all of the proposed measure's most significant effects as to the partisan offices to which it applies. Given our standard of review—and the applicable word limit, ORS 250.035(2)(a) (15-word limit for ballot title caption)—we cannot say that the phrasing of the ballot title caption does not substantially comply with

the statutory requirement to identify accurately the subject matter of the proposed measure.

Fourth, in a related vein, petitioners Mark and David Frohnmayer argue that the caption fails to meet the requirements of ORS 250.035(2)(a) because it *over*states the effects of IP 38 by failing to state that it applies only to partisan elections. The Attorney General replies that the caption substantially complies with the statute because other parts of the ballot title inform voters that the proposed measure applies only to "most partisan offices."

Just as a ballot title caption can fail for understating the major effect of a measure, so also can it fail for overstating the measure's major effects. *Kain/Waller*, 337 Or at 40 (caption should identify the proposed measure's subject matter in a way that "do[es] not understate or overstate the scope of the legal changes that the proposed measure would enact"). A ballot title caption that phrases the subject matter of a measure in too-sweeping terms "fails to disclose the subject matter of the proposed measure in terms that give notice to the voters of the principal substantive choice or choices that the measure presents." *Rogers v. Myers*, 344 Or 219, 224, 179 P3d 627 (2008).

In this case, the Attorney General's certified ballot title caption broadly states that IP 38, if adopted, would change the "general election nominating process." The proposed measure, however, would not change the general election nominating process for nonpartisan offices. Indeed, the proposed measure would not change the general election nominating process for all partisan offices, either. By its terms, the measure would apply only to "voter choice offices," which the measure defines as meaning a specified list of partisan political offices. The ballot title caption thus overstates the effect of the measure and requires referral for that reason, as well.

Fifth, and finally, petitioner Dixon argues that the "no" vote result statement is defective because, among other things, it states that a "no" vote would retain "vote limitation." The Attorney General does not respond to that

argument beyond the general assertion that the "no" vote result statement complies with the law.

ORS 250.035(2)(c) requires ballot titles to contain "yes" and "no" vote result statements that consist of "simple and understandable statement[s]" that "describe[] the result if the measure is rejected." The description of the result must not be inaccurate or misleading. *McCormick v. Kroger/Devlin*, 347 Or 293, 300, 220 P3d 412 (2009).

In this case, the "no" vote result statement's reference to "vote limitation" presumably is intended to contrast with the statement in the caption that, under IP 38, voters are permitted "unlimited votes." As we have concluded, however, the reference to "unlimited votes" in the caption is inaccurate and misleading. If the reference in the caption to unlimiting voting is eliminated, then the later reference to a "vote limitation" that would be retained if the measure is rejected has no point of reference and becomes, at best, confusing, if not misleading. We conclude that this aspect of the "no" vote result statement must be remedied on referral.

In that regard, we note that petitioners advance other arguments about the "yes" and "no" vote result statements and the summary that, in essence, complain that the foregoing errors in the caption have been repeated in the other portions of the ballot title. We assume that the Attorney General "is quite capable of identifying the ways in which the other sections of the certified ballot title are affected" by our decision and will modify the ballot title accordingly on referral. *Keisling/Lutz*, 343 Or at 385-86 n 2.

Ballot title referred to Attorney General for modification.