On petitions to review ballot title filed November 22, 2019, considered and under advisement on January 22; ballot title referred to Attorney General for modification March 5, 2020

Keely HOPKINS
and Paul Donheffner,
*Petitioners,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S067200) (Control)

Kevin STARRETT,
*Petitioner,*

*v.*

Ellen F. ROSENBLUM,
Attorney General, State of Oregon,
*Respondent.*

(SC S067201)

460 P3d 503

Petitioners challenged aspects of the certified ballot title that the Attorney General prepared for Initiative Petition (IP) 40 (2020). If approved, IP 40 would establish requirements for securing firearms, reporting the loss or theft of firearms, and supervising minors' use of firearms; and would establish consequences for violating those requirements, including strict liability for injuries caused by the use of the firearms involved in the violations. *Held*: (1) The caption and the "yes" result statement must be modified to accurately reflect that categories of persons in addition to owners would be subject to IP 40 if approved; (2) the caption must be modified to describe the liability that IP would impose as strict liability; and (3) the "yes" result statement must be modified to accurately convey the scope of the requirement to secure firearms under IP 40.

The ballot title is referred to the Attorney General for modification.

En Banc

Shawn M. Lindsay, Harris Berne Christensen LLP, Portland, filed the petition for review and reply memorandum for petitioners Keely Hopkins and Paul Donheffner.

Eric Winters, Wilsonville, filed the petition for review and reply memorandum for petitioner Kevin Starrett.

Denise J. Fjordbeck, Assistant Attorney General, Salem, filed the answering memorandum for respondent. Also on the answering memorandum were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

DUNCAN, J.

The ballot title is referred to the Attorney General for modification.

## DUNCAN, J.

In these consolidated cases, petitioners seek judicial review of the Attorney General's certified ballot title for Initiative Petition 40 (2020) (IP 40). For the reasons explained below, we conclude that the ballot title's caption and "yes" result statement do not substantially comply with the applicable statutory requirements. Therefore, we refer the ballot title to the Attorney General for modification.

If enacted, IP 40 would establish requirements for securing firearms, reporting the loss or theft of firearms, and supervising minors' use of firearms. It would also establish consequences for violating those requirements, including strict liability for injuries caused by use of the firearms involved in the violations. Additional details about IP 40 are described below in our discussion addressing petitioners' challenges to the ballot title, and the full text of IP 40 is attached as an appendix.

We begin with a brief review of the statutes governing ballot titles, including this court's review of them. The contents of a ballot title are prescribed by statute. ORS 250.035(2). A ballot title consists of four parts: a caption, a "yes" result statement, a "no" result statement, and a summary. *Id.* Each part is subject to a word limit. *Id.*

The Attorney General prepares a draft ballot title, ORS 250.065(4), and the Secretary of State provides public notice of the draft and collects written comments on it, which are then provided to the Attorney General, ORS 250.067(1). After considering the comments, the Attorney General certifies either the draft ballot title or a revised ballot title. ORS 250.067(2)(a). If an elector who submitted a timely written comment on the draft ballot title believes that the certified ballot title does not substantially comply with the applicable statutory requirements, the elector may petition this court for judicial review. ORS 250.085(2). On review, the elector may renew any challenge made to the text of the draft ballot title. ORS 205.085(6). The elector may also challenge any text added after the comment period. *Id.* But an elector may not raise any challenge to the text of the draft ballot title that could have been made, but was not, during the comment period. *Id.* This court reviews certified ballot

titles for substantial compliance with the applicable statutory requirements. ORS 250.085(5).

As required by statute, the Attorney General prepared a draft ballot title for IP 40, and the Secretary of State circulated it for public comment. Dozens of persons submitted comments, including petitioners. In response to some of the comments, the Attorney General modified the draft ballot title and certified the following ballot title:

> **"Owner must lock firearm/use locked storage (exceptions), report loss, supervise minors' use. Penalties/liabilities.**
>
> **"Result of 'Yes' Vote:** 'Yes' vote requires owner to lock firearms when stored, transferred; exceptions. Owner must report theft, loss. Use by minors supervised. Penalties; strict liability for injuries.
>
> **"Result of 'No' Vote:** 'No' vote retains current law; locking firearms, reporting theft or loss not required. Retains current law regarding possession/ sale to minors. Owner liability requires negligence.
>
> **"Summary:** Requires firearm owner/ possessor to secure it with trigger or cable lock, or in locked container when not carried by owner/ possessor, with some exceptions; must transfer firearm with trigger or cable lock, or in locked container; must report theft or loss of firearm to law enforcement within 24 hours; person transferring firearm to minor must directly supervise minor's use. Failure to comply with requirements treated as violation (not crime). Person who violates requirements strictly liable if firearm that is subject of violation injures person/ property within four years of violation; liability does not apply if injury results from self-defense or defense of another. Oregon Health Authority to adopt specifications for trigger locks, cable locks, firearm containers. Defines 'firearm,' 'transfer,' other terms. Other provisions."

Petitioners challenge all four parts of the Attorney General's certified ballot title for IP 40.[1] Some of petitioners' arguments could have been made during the comment

---

[1] Petitioner Starrett filed one petition for review, and petitioners Hopkins and Donheffner filed another one. For convenience, we refer to the three petitioners collectively.

period but were not; consequently, we cannot consider them. ORS 250.085(6). We have considered all of petitioners' properly raised arguments. For the reasons explained below, we agree with some of petitioners' arguments regarding the ballot title caption and the "yes" result statement. We reject the remainder of their arguments without further discussion.

Petitioners' first challenge concerns the caption of the certified ballot title. A ballot title must contain "[a] caption of not more than 15 words that reasonably identifies the subject matter of the *** measure." ORS 250.035(2)(a). "The 'subject matter' is the 'actual major effect' of a measure or, if the measure has more than one effect, all such effects (to the limit of the available words)." *Parrish v. Rosenblum*, 365 Or 597, 600, 450 P3d 973 (2019) (quoting *Markley/Lutz v. Rosenblum*, 362 Or 531, 534, 413 P3d 966 (2018)). A caption must describe a measure's subject matter "accurately, and in terms that will not confuse or mislead potential petition signers and voters." *Greene v. Kulongoski*, 322 Or 169, 174-75, 903 P2d 366 (1995). "One way that a caption may be 'inaccurate' for the purposes of ORS 250.035(2)(a) is by being 'underinclusive.' A caption is underinclusive when it identifies the subject matter of a measure by mentioning only some of its aspects, while leaving other, 'major aspects' of the measure unmentioned." *Dixon/Frohnmayer v. Rosenblum*, 355 Or 364, 370, 327 P3d 1160 (2014).

Again, the caption here states, "*Owner* must lock firearm/use locked storage (exceptions), report loss, supervise minors' use. Penalties/liabilities." (Emphasis added.) Petitioners argue that the caption is impermissibly underinclusive because it does not accurately reflect the categories of persons who will be subject to IP 40 if it is approved. They point out that the caption mentions owners but does not mention the other categories of persons who will be subject to IP 40, including persons who possess, transfer, or control firearms.

Petitioners are correct that IP 40 applies to persons other than firearm owners. Specifically, section 1 provides, in part, "A person who owns *or possesses* a firearm shall, at all times that the firearm is not carried by or under the control of the person or an authorized person, secure the firearm[.]"

IP 40, § 1(1)(a) (emphasis added). Section 2 requires "[a] person transferring a firearm" to secure the firearm. *Id*. § 2(1). Section 3 requires "[a] person who owns, possesses or controls a firearm" to report the loss or theft of the firearm. *Id*. § 3(1)(a). And, section 4 requires "[a] person who transfers a firearm to a minor" to directly supervise the minor's use of the firearm. *Id*. § 4(2)(a). Thus, IP 40 applies to all persons who own, possess, transfer, or control firearms.[2]

The Attorney General does not dispute that IP 40 applies to persons other than firearm owners. But she contends that the caption identifies "as many of the major effects of the measure as can be conveyed in fifteen words."

We agree with petitioners that the caption is deficient because it refers to owners but does not refer to the other categories of persons who will be subject to IP 40, if it is approved. As written, the caption does not accurately reflect the scope of IP 40. It could cause potential petition signers and voters to incorrectly conclude that, if they do not own a firearm, IP 40 will not affect them. Because the caption is underinclusive in a way that renders it inaccurate and misleading, it must be modified.

We recognize that trying to describe all the major effects of a measure in 15 words "can be difficult" and that, at times, it is necessary "to describe those effects generally." *McCann/Harmon v. Rosenblum*, 354 Or 701, 707, 320 P3d 548 (2014). We also recognize, as the Attorney General contends in this case, that it may not be possible to list all the categories of persons subject to IP 40 in a 15-word caption. But that does not mean that the caption may include one of those categories and omit the others, when doing so could mislead potential petition signers and voters. Instead, the caption may have to be more general.

In connection with that observation, we note that the caption of the Attorney General's draft ballot title did

---

[2] The requirements do not apply in all circumstances. For example, the requirement that a person who owns or possesses a firearm secure the firearm "at all times that the firearm is not carried by or under the control of the person or an authorized person," IP 40, § 1(1)(a), does not apply when the firearm is being used for certain purposes, including (with some limitations) safety training, target shooting, hunting, or self-defense, *id*. § 1(3).

not mention firearm owners or otherwise identify the persons who will be subject to IP 40. It simply stated, "Requires firearms be locked during storage/transfer, loss reported, minors' use supervised; imposes penalties/liabilities."

The Attorney General added the word "[o]wner" to the caption after the comment period. It appears that she did so in response to comments asserting that the draft caption incorrectly implied that, under IP 40, a firearm must be secured *only when stored or transferred*, even though IP 40 provides, in pertinent part, "A person who owns or possesses a firearm shall, *at all times that the firearm is not carried by or under the control of the person or an authorized person*, secure the firearm." IP 40, § 1(1)(a) (emphasis added). As described by the Attorney General, one of the commenters had asserted that "the use of 'storage' in the caption is misleading, in that the measure requires that a firearm be locked whenever it is not under the immediate control of the owner." It appears that the Attorney General may have added the word "[o]wner" to the caption in response to the commenter's use of that word. But adding the word "[o]wner" to the caption was not necessary to address the comment, which concerned *when* firearms must be secured under IP 40, not *who* must secure them. Indeed, in response to the comment, the Attorney General focused on when a firearm must be secured, stating, "We have modified the caption to make it clear that the firearm must either be locked or placed in locked storage, with exceptions." The modification resulted in the use of the phrase at issue here: "*Owner* must lock firearm/use locked storage (exceptions)[.]" (Emphasis added.) Thus, it appears that, in an attempt to fix one problem, the Attorney General inadvertently created a different one.

The term "owner" does not appear to be necessary to the caption. The Attorney General has not identified any reason for including it, and petitioners have not argued that the caption must specify the categories of persons who will be subject to IP 40. Indeed, one petitioner has stated that, given the word limit, it would be impossible to do so. Thus, the problem that resulted from adding "owner" to the caption can be remedied by deleting it.

Petitioners raise a second challenge to the certified caption, contending that it does not adequately describe the consequences of violating a requirement set out in IP 40. Again, the caption states, "Owner must lock firearm/use locked storage (exceptions), report loss, supervise minors' use. *Penalties/liabilities*." (Emphasis added.) Petitioners contend that the caption is deficient because it does not convey that, if a person violates an IP 40 requirement by failing to secure a firearm, failing to report the loss or theft of a firearm, or failing to supervise a minor's use of a firearm, the person can be "strictly liable" for injuries resulting from the use of the firearm involved in the violation.

Petitioners are correct that IP 40 provides that persons who violate its requirements can be "strictly liable" for injuries. Section 1 of IP 40 provides, "If a person obtains an unsecured firearm as a result of the owner or possessor violating [subsection 1(1), which requires that firearms be secured,]" and the firearm is used to injure a person or property within four years of the violation, the owner or possessor of the firearm who violated [subsection 1(1)] is strictly liable for the injury." IP 40, § 1(4)(a). Similarly, section 2 makes a person who transfers an unsecured firearm "strictly liable" for injuries caused by use of the firearm within four years of the transfer. *Id.* § 2(4)(a). Section 3, which requires the reporting of lost or stolen firearms, provides that a person who fails to make a required report is "strictly liable" for injuries caused by use of the firearm until the person makes the report or four years pass, whichever occurs first. *Id.* § 3(3)(a). Finally, section 4 provides that a person who transfers a firearm to a minor, but fails to directly supervise the minor's use of the firearm, is "strictly liable" for injuries "caused by the minor's use of the firearm." *Id.* § 4(2)(a).[3]

In response to petitioners' contention that the caption must describe the liability that IP 40 would impose as "strict liability," the Attorney General asserts that the caption is sufficient, given the word limit.

---

[3] There are exceptions to a person's strict liability under each section, including for when the firearm was used in a lawful act of self-defense or defense of another person.

We agree with petitioners. A caption must identify a measure's subject matter in a way that does not understate the scope of the legal changes that would result from approval of the measure. *Kain v. Myers*, 337 Or 36, 40, 93 P3d 62 (2004). IP 40 would substantially increase a person's liability for injuries caused by use of a firearm, including use by another person, by eliminating the requirement of recklessness, negligence, or intent that would otherwise exist and that exists for most tort liabilities. *See generally Black's Law Dictionary* 1099 (11th ed 2019) (defining "strict liability" as "[l]iability that does not depend on proof of negligence or intent to do harm but that is based instead on a duty to compensate the harms proximately caused by the activities or behavior subject to the liability rule"). To adequately alert potential petition signers and voters to that substantial change in the law, the caption must identify the heightened liability that IP 40 would impose.

Petitioners also challenge the certified ballot title's "yes" result statement. A "yes" result statement must be a "simple and understandable statement of not more than 25 words that describes the result if the \*\*\* measure is approved." ORS 250.035(2)(b). "To substantially comply with that standard, an accurate description of the change that will be caused by the measure is key." *Lavey v. Kroger*, 350 Or 559, 564, 258 P3d 1194 (2011) (citation omitted).

Again, the "yes" result statement states, "**Result of 'Yes' Vote:** 'Yes' vote requires *owner* to lock firearms *when stored, transferred*; exceptions. *Owner* must report theft, loss. Use by minors supervised. Penalties; strict liability for injuries." (Emphases added.) Petitioners challenge two aspects of the "yes" result statement. First, they assert that, as with the caption, inclusion of the word "owner" results in an inaccurate and misleading description of IP 40. For the same reasons explained above in connection with petitioners' challenge to the caption, we agree.

Second, petitioners assert that the "yes" result statement is inaccurate because it implies that firearms must be secured only when they are stored or transferred. As mentioned, IP 40 provides, "A person who owns or possesses a firearm shall, *at all times that the firearm is not*

*carried by or under the control of the person or an autho-rized person*, secure the firearm." IP 40, § 1(1) (emphasis added). Petitioners argue that the "yes" result statement implies that IP 40 requires that firearms be secured only when stored or transferred. According to petitioners, that is inaccurate because, under IP 40, a firearm may have to be secured even when it is not "stored," as that word is commonly understood.

As described above, petitioners made a similar argument about the caption of the draft ballot title, to which the Attorney General responded by modifying the caption. But now, in connection with petitioners' challenge to the "yes" result statement, the Attorney General asserts that the phrase "requires owner to lock firearms when stored, transferred" is accurate because, "[w]hen a firearm is not being carried, it is usual for it to be in a designated place where it can be readily located—in other words, 'stored.'"

We agree with petitioners. In the "yes" result state-ment, the word "stored" conveys that the firearm has been left or deposited in a place for keeping or preservation. *See Webster's Third New Int'l Dictionary* 2252 (unabridged ed 2002) (defining "store" to mean "to leave or deposit in a \*\*\* place for keeping, preservation"). It covers some cir-cumstances in which, under IP 40, a firearm would have to be secured. But potential petition signers and voters are not likely to associate it with other common circumstances in which a firearm is not carried or under the control of an authorized person and, under IP 40, would have to be secured. Therefore, the "yes" statement does not accurately convey the scope of the requirement to secure firearms under IP 40. *See Stacey v. Myers*, 342 Or 455, 458-59, 154 P3d 109 (2007) (when the concept to be communicated is key to understanding the proposed measure, and the word limit permits including that concept, the "yes" result statement should notify signers and voters of that result).

In sum, we conclude that the caption and "yes" result statement of the certified ballot title for IP 40 do not substantially comply with the applicable statutory require-ments. The caption is deficient because it refers to firearm owners, while excluding other categories of persons who will

be subject to IP 40 if approved, and because it does not state that IP 40 would impose strict liability. The "yes" result statement is deficient because, like the caption, it refers to owners, but excludes others who will be subject to IP 40, and because it does not reflect common circumstances in which, under IP 40, a firearm must be secured. Therefore, we refer the ballot title to the Attorney General for modification of the caption and "yes" result statement.

The ballot title is referred to the Attorney General for modification.

## APPENDIX

Whereas this measure is designed to prevent tragedies such as the 2012 Clackamas Town Center shooting by creating rules for safe storage of guns, and is named after victims Cindy Yuille and Steven Forsyth; and

Whereas this measure will help reduce accidental child injury and death by requiring safe storage (Section 1) and transfer (Section 2); and

Whereas this measure will help law enforcement catch thieves and stop the transfer of guns to people prohibited from owning them by requiring reporting of lost or stolen guns (Section 3); and

Whereas this measure will hold irresponsible owners responsible if their guns were not stored safely. (Section 1); and

Whereas this measure has no effect on what guns you can own or purchase, and does not make any changes to who can own guns; and

Whereas nothing in this measure allows police to come into your home to inspect how your guns are stored; now, therefore,

### Be it enacted by the People of the State of Oregon:

SECTION 1. (1)(a)  A person who owns or possesses a firearm shall, at all times that the firearm is not carried by or under the control of the person or an authorized person, secure the firearm:

(A)   With an engaged trigger lock or cable lock that meets or exceeds the minimum specifications established by the Oregon Health Authority under section 5 of this 2020 Act; or

(B)   In a locked container, equipped with a tamper-resistant lock that meets or exceeds the minimum specifications established by the Oregon Health Authority under section 5 of this 2020 Act.

(b)   For purposes of paragraph (a) of this subsection, a firearm is not secured if a key, combination or other

means of opening a lock or container is readily available to a person the owner or possessor has not authorized to carry or control the firearm.

(c)   Each firearm owned or possessed in violation of this subsection of this 2020 Act constitutes a separate violation.

(2)(a)   A violation of subsection (1) of this section is a Class C violation.

(b)   Notwithstanding paragraph (a) of this subsection, if a minor obtains an unsecured firearm as a result of a violation of subsection (1) of this section and the owner or possessor of the firearm knew or should have known that a minor could gain unauthorized access to the unsecured firearm, the violation is a Class A violation.

(3)   Subsection (1) of this section does not apply if the unsecured firearm was obtained:

(a)   At a shooting range, shooting gallery or other area designed for the purpose of target shooting, for use during target practice, a firearms safety or training course or class or a similar lawful activity;

(b)   For the purpose of hunting, trapping or target shooting, during the time in which the person is engaged in activities related to hunting, trapping or target shooting;

(c)   When the person and the firearm are in the presence of the owner or possessor of the firearm under circumstances in which the owner or possessor can prevent the person from obtaining or using the firearm;

(d)   By a person who is in the business of repairing firearms, during the time in which the person is engaged in repairing the firearm;

(e)   By a person who is in the business of making or repairing custom accessories for firearms, during the time in which the person is engaged in making or repairing the accessories; or

(f)   By a person who obtained the firearm for the purpose of a lawful act of self-defense or defense of another

person and the person retains the firearm only as long as is necessary to prevent a death or serious physical injury.

(4)(a)   If a person obtains an unsecured firearm as a result of the owner or possessor of a firearm violating subsection (1) of this section and the firearm is used to injure a person or property within four years of the violation, the owner or possessor of the firearm who violated subsection (1) of this section is strictly liable for the injury.

(b)   The liability imposed by paragraph (a) of this subsection does not apply if the injury results from a lawful act of self-defense or defense of another person.

(5)   This section does not apply to an individual who is on duty as a member of a law enforcement unit as that term is defined in ORS 181A.355.

SECTION 2.   (1)   A person transferring a firearm shall transfer the firearm:

(a)   With an engaged trigger lock or cable lock that meets or exceeds the minimum specifications established by the Oregon Health Authority under section 5 of this 2020 Act; or

(b)   In a locked container, equipped with a tamper-resistant lock, that meets or exceeds the minimum specifications established by the Oregon Health Authority under section 5 of this 2020 Act.

(2)(a)   A violation of subsection (1) of this section is a Class C violation.

(b)   Each firearm transferred in violation of subsection (1) of this section constitutes a separate violation.

(3)   Subsection (2) of this section does not apply if the improperly transferred firearm was obtained for the purpose of a lawful act of self-defense or defense of another person and the person retains the firearm only as long as is necessary to prevent a death or serious physical injury.

(4)(a)   If a firearm transferred in a manner that violates subsection (1) of this section is used to injure a person or property within four years of the violation, the owner or possessor of the firearm who transferred the firearm in

violation of subsection (1) of this section is strictly liable for the injury.

(b)   The liability imposed by paragraph (a) of this subsection does not apply if the injury results from a lawful act of self-defense or defense of another person.

SECTION 3.   (1)(a)   A person who owns, possesses or controls a firearm shall report the loss or theft of the firearm to a law enforcement agency in the jurisdiction in which the loss or theft occurred not later than 24 hours of the time the person knew or reasonably should have known of the loss or theft.

(b)   If a means of reporting a loss or theft of a firearm within 24 hours is not reasonably available, the person who owned, possessed or controlled the firearm that was lost or stolen must report the loss or theft within 24 hours of the means of reporting becoming available.

(2)(a)   A violation of subsection (1) of this section is a Class B violation.

(b)   Each firearm for which a person does not make the report within the time required by subsection (1) of this section constitutes a separate violation.

(3)(a)   If a lost or stolen firearm is used to injure a person or property and the person who owned, possessed or controlled the firearm at the time of the loss or theft did not report the loss or theft within the time period required by subsection (1) of this section, the person who owned, possessed or controlled the firearm at the time of the loss or theft is strictly liable for the injury for four years from the expiration of the time limit for reporting or until the loss or theft report is made, whichever occurs sooner.

(b)   The liability imposed by paragraph (a) of this subsection does not apply if the injury results from a lawful act of self-defense or defense of another person.

(4)(a)   If the report of the loss or theft of a firearm contains the serial number of the firearm, the law enforcement agency receiving the report must retain the serial number.

(b)   Within 24 hours of receiving a report under subsection (1) of this section, a law enforcement agency shall provide the information concerning the lost or stolen firearm to the Department of State Police.

(c)   The department shall enter the information concerning the lost or stolen firearm into the Law Enforcement Data System or another electronic database as determined by the department.

(d)   The department may adopt rules to carry out the provisions of this subsection.

SECTION 4.   (1)(a)   A person who transfers a firearm to a minor shall directly supervise the minor's use of the firearm.

(b)   Notwithstanding ORS 166.250, except in the case of a lawful act of self-defense or defense of another person, a minor may possesses [*sic*] a firearm only under the direct supervision of an adult.

(2)(a)   A person who transfers a firearm to a minor, and who fails to directly supervise the minor's use of the firearm, is strictly liable for injury to person or property caused by the minor's use of the firearm.

(b)   The liability imposed by paragraph (a) of this subsection does not apply if the injury results from a lawful act of self-defense or defense of another person.

(3)   This section does not apply to the transfer of a firearm:

(a)   That is owned by the minor; or

(b)   To a minor who holds a valid youth license under ORS 497.127 for the purposes of hunting in accordance with ORS 497.360.

SECTION 5.   (1)   No later than January 1, 2021, the Oregon Health Authority shall adopt temporary rules establishing the minimum specifications for trigger locks, cable locks and containers equipped with tamper-resistant locks required by sections 1 and 2 of this 2020 Act.

(2)   No later than July 1, 2021, the Oregon Health Authority shall, in consultation with the Department of

State Police and after considering any relevant standards in the Consumer Product Safety Act (15 U.S.C. 2051 et seq.), adopt permanent rules establishing the minimum specifications for trigger locks, cable locks and containers equipped with tamper-resistant locks required by sections 1 and 2 of this 2020 Act.

SECTION 6.   A gun dealer shall post in a prominent location in the gun dealer's place of business a notice, in block letters not less than one inch in height, that states: 'The purchaser of a firearm has an obligation to store firearms in a safe manner and to prevent unsupervised access to a firearm. If a person obtains access to a firearm and the owner failed to store the firearm in a safe manner, the owner may be in violation of the law.

SECTION 7.   As used in sections 1 to 6 of this 2020 Act:

(1)   "Authorized person" means a person authorized by the owner or possessor of a firearm to carry or control the firearm.

(2)(a)   "Container" means a box, case, chest, locker, safe or other similar receptacle.

(b)   "Container" does not include a building, room or vehicle or a space within a vehicle.

(3)   "Control" means, in relation to a firearm, that a person is in sufficiently close proximity to the firearm to prevent another person from obtaining the firearm.

(4)   "Firearm" has the meaning given that term in ORS 166.210, except that it does not include a firearm that has been rendered permanently inoperable.

(5)   "Law enforcement agency" has the meaning given that term in ORS 166.525.

(6)   "Minor" means a person under 18 years of age.

(7)(a)   "Transfer" means the delivery of a firearm from a person to a recipient, neither of whom is a gun dealer or is licensed as a manufacturer or importer under 18 U.S.C. 923, including, but not limited to, the sale, gift, loan or lease of the firearm.

(b) "Transfer" does not include the temporary provision of a firearm by a person to a recipient other than a minor if the person has no reason to believe the recipient is prohibited from possessing a firearm or intends to use the firearm in the commission of a crime, and the provision occurs:

(A) At a shooting range, shooting gallery or other area designed for the purpose of target shooting, for use during target practice, a firearms safety or training course or class or a similar lawful activity;

(B) For the purpose of hunting, trapping or target shooting, during the time in which the recipient is engaged in activities related to hunting, trapping or target shooting;

(C) Under circumstances in which the recipient and the firearm are in the presence of the person;

(D) To a recipient who is in the business of repairing firearms, for the time during which the firearm is being repaired;

(E) To a recipient who is in the business of making or repairing custom accessories for firearms, for the time during which the accessories are being made or repaired; or

(F) For the purpose of preventing imminent death or serious physical injury, and the provision lasts only as long as is necessary to prevent the death or serious physical injury.

(G) Delivery of a firearm made inoperable for the specific purpose of being used as a prop in the making of a motion picture or a television, digital or similar production.

SECTION 8. This 2020 Act shall be known and may be cited as the Cindy Yuille and Steve Forsyth Act.

SECTION 9. Sections 1, 2, and 6 of this 2020 Act become operative January 1, 2021.